YATES, Judge.
In January 1998, R.O.M. petitioned for custody of, or, in the alternative, for visitation rights as to W.K.D.J. and seeking a judgment declaring that he is the father of W.K.D.J. R.O.M. alleged that temporary custody had been granted to the maternal grandmother, B.B., in September 1997; that the mother, D.J., was not a fit and proper person to have custody of the minor child; and that R.O.M. had submitted to blood tests, the results of which indicated a high probability that he was the father of the child. The maternal grandmother and R.O.M. then entered into an agreement allowing R.O.M. weekend visitation with the child; the court, in February 1998, entered an order approving the visitation schedule. In March 1998, R.O.M. moved for a paternity determination, arguing that his DNA results indicated a 99.35% probability of paternity; and that the mother and the maternal grandmother had acknowledged R.O.M. as the child’s father. R.O.M. also submitted to the court documents relating to the mother’s divorce from T.W.J. (“the ex-husband”), which stated no children were born of the marriage, although the ex-husband was shown as the father on the child’s birth certificate. R.O.M., in April 1998, amended his petition to add the ex-husband as an indispensable party. The ex-husband submitted a handwritten waiver of his rights as to the child, which was filed with the court on May 14, 1998. R.O.M. moved that the ex-husband be ordered to submit to DNA testing to exclude the ex-husband as the child’s biological father; the court, in July 1998, granted the motion. In September 1998, the court-ordered blood testing excluded the ex-husband as the father and indicated that there was a 99.56% probability that R.O.M. was the father. R.O.M. moved for an in-home study to be conducted on his residence, stating that the court had ordered an in-home study on the mother’s home and that such an evaluation might prove helpful in any future custody determinations; the court granted the motion. Following the completion of the in-home study, R.O.M., in February 1999, moved for a final hearing. In February 1999, the mother petitioned for custody. In September 1999, the ex-husband moved to intervene as the presumed father of the child. In September 1999, the maternal grandmother moved for a summary judgment, arguing that R.O.M. lacked standing, under § 26-17 — 5(a)(1), Ala.Code 1975, to challenge the paternity of the child.
Following an ore tenus proceeding, the court, on October 8, 1999, entered a summary judgment in favor of the maternal grandmother and the ex-husband, and dismissed R.O.M.’s petition, stating, in part:
“[The maternal grandmother] and [the ex-husband] have shown that there is no genuine issue as to any material fact and that [R.O.M.] (the alleged biological father of [W.K.D.J.]), failed to present substantial evidence to demonstrate the existence of a genuine issue of material fact, the Court finds as follows:
“1. That [R.O.M.], the alleged biological father of said minor child has no standing to bring a paternity action under the Alabama Uniform Parentage Act;
“2. That [the ex-husband] is the presumed father of said minor child and is now actively pursuing exercising his parental rights.”
This appeal followed.
R.O.M. argues that the court erred in entering the summary judgment. We agree.
In State ex rel. P.W. v. T.H.P., 726 So.2d 279 (Ala.Civ.App.1998), this court stated, regarding a summary judgment entered in a paternity action:
“A motion for a summary judgment may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a *399 matter of law. If the moving party-makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact.”
Id. at 281 (citation omitted).
We glean the following facts from the record: The mother and the ex-husband were married on November 2, 1994; the child was born on May 31, 1995, less than seven months after the marriage. Although the mother indicated on the child’s birth certificate that the ex-husband was the father, the subsequent divorce papers stated that no children were born of the marriage. The ex-husband did not pursue any legal rights regarding the child; he was not required to support the child. Additionally, he signed a waiver of all rights as to the child after R.O.M. petitioned to add him as a party in the paternity action. Further, we note that the court approved an agreement between R.O.M. and the maternal grandmother granting R.O.M. weekend visitation with the child; that it ordered an in-home study be conducted of R.O.M.’s home at R.O.M.’s request; and that it ordered that DNA testing be done on the ex-husband and R.O.M.. The DNA tests clearly excluded the ex-husband as the child’s father and established with a 99.56% degree of certainty that R.O.M. was the father.
Based on the evidence, we conclude that the court erred in entering a summary judgment for the maternal grandmother and the ex-husband. Section 26-17-5(b), Ala.Code 1975, states:
“(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control.”
It is clear that R.O.M. presented substantial evidence to defeat the maternal grandmother’s summary-judgment motion and that he presented clear and convincing evidence to rebut the presumption that the ex-husband is the father of the child, who was born during the ex-husband’s marriage to the child’s mother. We find no evidence that the ex-husband exercised his parental rights before filing a motion to intervene in September 1999, over one year after R.O.M.’s initial action was filed. Further, the ex-husband disclaimed all rights to the child by submitting a waiver of those rights to the court. We, therefore, distinguish this case from the ruling in Ex parte C.A.P., 683 So.2d 1010 (Ala. 1996), in which our supreme court denied standing to a putative father who had sought paternity as to a child born during a marriage to which he was not a party. There, the court held that the husband was the presumed father because he was married to the mother when the child was born and the husband had not disclaimed his rights as the child’s father. In the present case, we find controlling the fact that the ex-husband initially disclaimed all legal rights to the child and did not hold the child out as his own, while R.O.M. pursued all legal avenues to establish paternity. See J.K. v. R.S., 706 So.2d 1262 (Ala.Civ.App.1997), wherein this court reasoned that if the mother’s husband disclaims his status as the presumed father, then a man claiming to be the child’s biological father has standing under the Alabama Uniform Parentage Act.
Accordingly, we reverse the judgment and remand the case for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.